Todd Blanche
Attorney General
Rebecca R. Perez
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN P. SATHER,<br><br>Defendant. | Case No.: 2:25-CR-00146-RLP-1<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Plaintiff, United States of America, by and through Rebecca R. Perez, Assistant United States Attorney for the Eastern District of Washington, submits the following sentencing memorandum.

**1. PSIR and Guideline Calculation**

The United States agrees with the guideline calculation contained in the Presentence Investigation Report. Specifically, the United States agrees that the guideline calculation is as follows:

Base offense level: 22

Victim under the age of twelve: +2

Distribution in exchange for valuable consideration: +5

Exploitation of an infant: +4

Use of a computer: +2

Acceptance of Responsibility: -3

Adjusted offense Level: 32

Combined with Defendant's Criminal History Category of II, the resulting guideline range is <u>180 months</u> of incarceration (based on the statutory minimums available in this case).

The United States has no objections or corrections to the PSIR. The United States is not aware of any objections by Defendant.

**2. Sentencing Recommendation and Factors Under 18 U.S.C. § 3553(a)**

Based on the totality of the circumstances, the United States is seeking a sentence of 15 years (180 months), followed by a lifetime of supervised release in case 2:25-CR-146-RLP. The United States has not received any restitution requests in this case.

Defendant is a threat to the community. For most of Defendant's adult life, he has been seeking out images and videos of children being raped and sexually abused. Few sex offenders have such a significant documented pattern of sexual attraction to children and had been so aggressive and consistent in seeking out child pornography.

In the early 2000s, Defendant was convicted in military court of child pornography offenses. The military judgment reflects that Defendant possessed computer discs containing child pornography over a period of time in 2000. He pled guilty, spent 13 months in prison, and was discharged from the military. This was Defendant's first criminal conviction and, as far as the United States is aware, Defendant's first significant interaction with law enforcement. The impact on his life was significant.

Yet, Defendant's behavior escalated. In 2011, the FBI began investigating an online chat involving Defendant and his repeated requests for child pornography. This led a search warrant at Defendant's residence, which was easily located due to Defendant's status as a registered sex offender. Defendant was cooperative and admitted his receipt of thousands of child pornography images, explaining that he had

returned to his behavior around 2004, a short time after his release from military prison. Defendant was not arrested at that time and remained out of custody.

Defendant was not deterred in his behavior, and quickly went back to seeking out child pornography. A few weeks later, he created a fake online persona as a 14 year old girl, and ultimately admitted to spending hours online every day trading images of children being abused. One of the people he distributed to was an undercover officer, which then led to yet another search warrant at Defendant's residence. Forensic review confirmed over 8,000 images of child pornography on Defendant's devices. Following this second investigation in December 2010, Defendant was arrested. He ultimately pled guilty in federal court to receipt of child pornography, and was sentenced to 10 years in prison. He was released in mid 2019.

Again, Defendant's criminal behavior continued. While on supervised release, Defendant went through a series of violations, including being in the presence of children without authorization, viewing pornography, leaving the district, and failing to notify the officer of a change in employment. Notably, according to his PO at the time, in early 2025 Defendant began working for Angi's List, doing various handyman work in people's homes. This was done without the PO's knowledge, and when the PO requested a list of the homes Defendant had visited, she found a list written by Defendant with a specific column indicating whether or not there were children in the home. Defendant was released from the most recent SR violation in July 2025.

About one month following his release, Defendant's PO received notification that questionable internet activity was detected on Defendant's phone, which led to the instant charges. Defendant ultimately admitted to seeking out and downloading child pornography, including images of babies being raped. He stated he could not control his urges, and had been downloading child pornography the entire time he had been on supervision.

Defendant therefore cannot be deterred. By his own admission and confirmed by his behavior, Defendant is unable to stop seeking out some of the most horrifying images, depicting the most disgusting acts which can be committed. Prison sentences, supervision, losing a job, being forced to move, treatment, counseling, an FBI search warrant at his residence, and the threat of ongoing hearings has not altered Defendant's behavior. In fact, he has adapted—he has gone from ordering CDs with child pornography to accessing and storing child pornography in multiple ways on the internet and storing some of that in locked applications and deleting material in such a way that it cannot be forensically retrieved.

There are no hands-on allegations against Defendant. Even so, his criminal history is shocking and deeply concerning. And despite the lack of hands-on convictions, it is clear Defendant has sought to be in the physical presence of children and to contact them online. And although he earlier portrayed himself as a victim of child abuse himself, Defendant has now admitted this was not true and said to garner sympathy (PSIR paragraph 92).

And of course, the lack of a conviction involving the physical sexual abuse of a child does not make the case less concerning, or Defendant significantly less of a threat. The images that Defendant has been possessing for decades are not simply images—they portray actual children, with lives and names and interests and potential. And Defendant and others like him seek to view those children during their very worse moments, creating a rapidly-expanding community and market for the vilest predators to continue their exploitation of these children. Although no victims in this case wished to seek restitution or submit an impact statement, they are victims nonetheless. Many similar victims express the ongoing trauma and constant fear that strangers on the street, in school or work, or anywhere in public will recognize them from the worst moments of their lives. Defendant used these children for his own pleasure, for years, seemingly with no remorse and no ability or desire to stop his behavior.

Based on this and in consideration of all 3553(a) factors, the United States believes that a sentence of 15 years followed by a lifetime of supervised release is sufficient but not greater than necessary to meet the goals of sentencing.

**3. Recommendation in Supervised Release Case 2:11-CR-3-RLP**

Based on Defendant's admissions to violations in his supervised release case, the United States is recommending the statutory maximum sentence of 3 years, to be imposed consecutive to the underlying sentence in case 2:25-CR-146-RLP.

Defendant's violation could hardly be a more significant breach of the Court's trust. As he has admitted, and has been shown, Defendant has been committing new, serious violations of federal law *the entire time he has been under federal supervision.* It is difficult to find a Defendant who has more repeatedly and more significantly violated the conditions imposed by this Court. Based on this, the United States believes the statutory maximum sentence of 3 years is appropriate and earned.

The United States requests that this sentence run consecutive to Defendant's sentence in the above case 2:25-CR-146-RLP. As indicated by USSG 7B1.3(f), "any term of imprisonment imposed upon the revocation of …supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of revocation." That subsection applies here and based Defendant's conduct, the United States submits that a consecutive sentence is appropriate.

Dated: August 18, 2026.

Todd Blanche
Attorney General

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney