Nathan Poston
Federal Defenders of Eastern Washington and Idaho
601 West Riverside Ave., Suite 900
Spokane, Washington 99201
(509) 624-7606
Attorneys for Shawn Sather

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Rebecca L. Pennell

United States of America,

Plaintiff,

v.

Shawn Sather,

Defendant.

No. 2:25-CR-146-RLP-1

Sentencing Memorandum

Spokane - With Oral Argument

September 15, 2026, at 11:00 AM

Mr. Sather requests the Court impose a sentence of 180 months concurrent with the supervised release revocation in 2:11-CR-3-RLP-1. A sentence of 180 months is the mandatory minimum for this offense but also 12 months in excess of the high end of the advisory guideline. This sentence serves the purposes of 18 U.S.C. §3553(a) in providing a sentence “sufficient but not greater than necessary.”

## I. Relevant Facts

Last summer, Mr. Sather returned to the community following revocation of his supervised release. Since his release from prison in 2019, his struggles to control his urges continued and this resulted in viewing CSAM throughout his supervision. Mr.

Sather struggled with impulse control as well as how to treat the relapse occurrence. This situation presents as distinctly opposed to a more traditional substance abuse or gambling addiction. There, the addict is incentivized to report their relapse. Honesty in this process is integral to recovery. Honesty is often rewarded with lesser sanctions for those addressing dirty UAs. With Mr. Sather's issue, confessing to a relapse could lead to life altering legal consequences.

And it has. In late July of 2025, Mr. Sather was released from custody commencing another term of supervised release. After several days, he sought to delete all of his CSAM. The monitoring service installed on his phone documented 94 hours spent deleting images and apps on his phone. This included his primary conduit for these images, Telegram. He began this process nearly two weeks prior to being contacted by US Probation on August 13, 2025, due to an alert by the monitoring software. He was so thorough in deleting those materials that law enforcement only located *five* images.

During the custodial interview Mr. Sather expressed interest in learning where the fixation for this material arose. Like his interview with US Probation Officer Hambel, he answered questions without regard to their incriminating nature. In both interrogations, he felt unburdened. Since his incarceration, he voluntarily engaged in a little over 77 hours of programming in an effort better understand his underlying issues.

His favorite program was "The Freedom Fight" which focused on brain science, clinical practices, and biblical scripture to assist in understanding the full spectrum of physical, emotional, mental, and spiritual factors driving compulsive porn use. Knowing that he needed more than passive engagement, he's endeavored to look hard at his triggers and come to the understanding that true abstinence will not be achieved until he's processed all of his trauma and pain with others. For him, that trauma started with being the victim of childhood bullying. He also suffers from Klinefelter's syndrome which has a large variety of developmental issues.[1] These issues make those with Klinefelter's especially susceptible to bullying in adolescence. These factors weigh heavily on the front and back end of the vicious cycle involved in his acquisition, possession, and viewing of depictions. The dopamine found in locating these images would eventually be replaced by the depression and self-loathing that would follow in the realization of what he'd just done, but also the inescapable feeling of inevitability and hopelessness. As previously stated he did not feel like he could address these relapses by discussing them at all, let alone, in the candid nature required to therapeutically address them.

---

1. https://klinefeltersyndrome.org/psychological-problems-associated-with-klinefelter-syndrome/ . (8/17/26) Klinefelter's can cause boys (and men) to grow breasts when left untreated. Amongst the many complications that come with this syndrome, this one in particular has been an ongoing issue for Mr. Sather. As an adolescent, he struggled significantly with body image issues and learning in the classroom. This contributed heavily to low self-esteem.

Despite the inherent oppressive conditions he currently lives under, he's found liberty in participating in self-help groups. This freedom comes from not only from discarding the burden of carrying secrets and associated shame but also finding a feeling of connection to other people that was previously very difficult to come by. He's enjoyed the spiritual work so much that he has sought out additional[2] providers. Defense Counsel referred him to Washington Voices, an advocacy program extending resources to sex offenders in Washington State. He's excited about the prospect of helping others, but also find a community and a purpose. He's hopeful that this work will continue to replace the vicious cycle that led him here with one that provides a feeling of self-worth, value, and joy.

## II. Application of §3553(a) factors

The "overarching principle" of sentencing lies in the parsimony clause of the Sentencing Reform Act: courts may impose only what is necessary to achieve sentencing's goals—and nothing more. *U.S. v. Rosales-Gonzales*, 801 F.3d 1177, 1184 (9th Cir. 2015); *U.S. v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (parsimony clause is the "overarching statutory charge").

2. Mr. Sather wrote to numerous faith/biblical based therapy agencies seeking additional programming material. He has corresponded with House of Hope which provides devotionals and counseling for people in custody. This has been a productive relationship for him.

**1. Seriousness of Offense and Deterrence**

**a. Length of Previous Sentence and Age Upon Release**

Mr. Sather's previous sentence was 120 months. The requested sentence of 180 months is 50 percent higher than that sentence. The increase in this sentence is consistent with the seriousness of this offense while balancing the nature of it as it relates to his cycle of addiction, his efforts to address the underlying issue through elimination of the materials prior to contact with law enforcement, and post offense rehabilitation. Moreover, statistics from the United States Sentencing Commission bear out on the commonsense notion that older offenders are substantially less likely to reoffend. United States Sentencing Commission, *The Effect of Aging on Recidivism Among Federal Offenders*, 12/01/2017. The table[3] below is taken directly from the study referenced above.

3. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf , as of 8/18/26.

**Recidivism Rates of Recidivism Study Offenders by Length of Federal Sentence and Age at Release**

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 294 | 52.7% | 34.7% | 26.2% |
| 6 to 11 Months | 264 | 61.4% | 43.9% | 31.8% |
| 12 to 23 Months | 1,204 | 69.2% | 48.6% | 40.3% |
| 24 to 59 Months | 2,457 | 68.4% | 48.8% | 40.3% |
| 60 to 119 Months | 995 | 71.4% | 47.8% | 38.9% |
| 120 Months or More | 185 | 68.1% | 48.1% | 39.5% |
| **30-39 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 278 | 42.5% | 25.5% | 16.2% |
| 6 to 11 Months | 197 | 54.8% | 32.0% | 26.9% |
| 12 to 23 Months | 1,077 | 52.8% | 34.6% | 27.1% |
| 24 to 59 Months | 2,647 | 56.9% | 36.8% | 29.5% |
| 60 to 119 Months | 1,903 | 58.7% | 37.2% | 29.4% |
| 120 Months or More | 1,110 | 58.5% | 36.0% | 29.4% |
| **40-49 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 273 | 28.9% | 17.6% | 11.4% |
| 6 to 11 Months | 190 | 45.8% | 23.7% | 16.8% |
| 12 to 23 Months | 793 | 41.5% | 25.5% | 21.8% |
| 24 to 59 Months | 1,734 | 47.6% | 29.1% | 22.4% |
| 60 to 119 Months | 1,049 | 50.3% | 32.6% | 25.6% |
| 120 Months or More | 727 | 52.8% | 34.4% | 28.6% |
| **50-59 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 147 | 20.4% | 12.2% | 7.5% |
| 6 to 11 Months | 69 | 33.3% | 17.4% | 11.6% |
| 12 to 23 Months | 399 | 24.3% | 16.0% | 13.0% |
| 24 to 59 Months | 852 | 29.8% | 15.1% | 12.6% |
| 60 to 119 Months | 446 | 31.8% | 16.1% | 13.0% |
| 120 Months or More | 370 | 32.4% | 17.8% | 15.7% |
| **60 Years of Age or Older** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 55 | 20.0% | 12.7% | 9.1% |
| 6 to 11 Months | 40 | 15.0% | 15.0% | 7.5% |
| 12 to 23 Months | 171 | 12.3% | 6.4% | 5.3% |
| 24 to 59 Months | 321 | 19.0% | 9.4% | 7.5% |
| 60 to 119 Months | 155 | 17.4% | 9.0% | 6.5% |
| 120 Months or More | 129 | 20.9% | 10.9% | 8.5% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

If the Court adopts the request for 180 months concurrent with the supervised release revocation, Mr. Sather will be at least a couple months[4] shy of his 62nd

4. This assumes full reward of the 54 days of good time per year.

birthday. This age at time of release correlates well with a lower level of recidivism. Disturbingly, it also correlates well with a reduction[5] in life expectancy. This correlation is relevant considering Mr. Sather's previous and upcoming incarceration, but also his health characteristics. His type 2 diabetes is currently controlled, but his age and diabetes led his current provider to discontinue his testosterone. His Klinefelter's results in low testosterone. Normal low testosterone levels should be close to 250. He regularly comes in around 35 without testosterone supplements which results him in feeling off, experiencing fatigue, and growth of breasts. Two of those three negatively impact his ability to exercise, which is one of his core coping mechanisms. All three negatively impact his mental health. This has a compounding effect on his health and at some degree, his probable life expectancy.

**b. A Sentence of 180 months is a Defacto Upward Variance/Departure**

The advisory guideline in this matter is 135 to 168 months. A sentence of 180 months exceeds the high end of that range by 12 months or one year. This sentence

5. https://www.prisonpolicy.org/blog/2026/06/09/incarceration_impacts_in_later_life/ , (8/18/26). "While controlling for other characteristics like age, sex, race and ethnicity, and childhood health and socioeconomic factors, the researchers found that formerly incarcerated older people have an 88% higher hazard of premature death compared to those with no incarceration history. More specifically, older people who have experienced incarceration are expected to live nearly six fewer years than similar peers who have never been incarcerated. Formerly incarcerated men and women died at significantly younger average ages (74.8 and 68 years, respectively) than men and women without incarceration histories (82.3 years and 82.9 years, respectively)."

reflects the seriousness of the offense. Also reflective is the comparison to others similarly situated and documented by United States Sentencing Commission on its Judicial Sentencing INformation webpage. That page[6] documents sentencing statistics for 52 defendants with a primary guideline of §2G2.2, final offense level of 32, and criminal history category of II. The average length of imprisonment for these defendants is 137 months. The median length is 135 months. Imposing only the mandatory minimum sentence results in a sentence 43 and 45 months in excess of the average and median sentence lengths.

**2. Nature/Circumstances of Offense and Characteristics of Mr. Sather**

a. Possession of Five Images Due to Deletion of Images and Apps

The vehicle for charging Mr. Sather exists through five images found on his apple cloud account. This scant number exists because it was missed when Mr. Sather sought to delete all of CSAM images and applications used to access the same. Consistent with this premise, the images all have last modified dates of October of 2024. More significantly, this deletion process began well before being contacted by US Probation or law enforcement. It was primarily the result of not wanting to live as he had previously.

6. https://jsin.ussc.gov/analytics/saw.dll?Dashboard , (8/18/26)

This stands in contrast to the average CSAM possession/receipt case and is remarkable in its mitigation.

These five depictions also trigger multiple offense level characteristics. *See draft PSIR paragraphs 27, 28, 30, and 31.* This point is raised not as an objection, but that the guidelines more than account for his conduct through *permissible*[7] double counting and that the high end of guideline range is still 22 months below the requested sentence. The applicability of those offense level characteristics usually has some bearing in almost every federal CSAM case. This does raise the question of their meaningfulness related to conduct distinguishing or elevating offenses, especially as it relates to use of a computer in the offense.

This offense is also accompanied by admissions that can be seen truly as confessions. This extends well beyond just his offense conduct as he sought to clear the record as it relates to a claim of being victimized as a child. His deletion of the materials and his confessions leave him in the best position to move forward even if it comes in the form of lengthy incarceration.

7. *See e.g. U.S. v. Holt*, 510 F. 3d 1007 (9th Cir. 2007)

**b. Rehabilitation**

Mr. Sather has long struggled with a pornography addiction. He has felt the consequences from it on every level throughout his adult life. These consequences include court martial, divorce, incarceration, restrictions on employment, and loss of immediate familial relationships. The last one is particularly cruel as a sex offense conviction inherently provides an inescapable pariah status. These crushing consequences create difficulty in addressing the underlying issues in these cases. At the forefront are issues with connection and intimacy with others.

Scientifically, there is debate[8] about whether pornography addiction qualifies as psychiatric disorder. Regardless, Mr. Sather's relationship with the subject matter of this case demonstrates all the hallmarks of an addiction. His research into dopamine levels and their relationship to his own cycle of viewing/acquiring depictions is consistent with an addiction. More importantly, the pursuit of the same regardless of consequences is perhaps the clearest indication of his addiction. And yet, because a relapse will likely involve the commission of a new offense and the high likelihood of charges, therapeutic confession cannot be afforded to him. Of equal significance, telling a friend is also not an option as most would be revulsed by the details. The absence of

---

8. The DSM and World Health Organization take different positions in this regard.

this therapeutic measure deprives him of a way to work through a relapse and thereby prevent one in the future. It deprives him of the emotional relief stemming from a reduction in stress, anxiety, and the guilt associated with keeping the secret or suppressing those emotions. Shame and its toxic effects are attendant with his conviction. Those effects are all amplified by the inability to address a relapse productively and learn from it. The effects of this shame are seen in willingness to confess so readily and thoroughly to U.S. Probation and law enforcement.

The complexity of *recovery* in this situation is one that can foster isolation rather than connection. Since his incarceration, he has voluntarily sought out programming and help. He's genuinely tried to foster connections with others through self-help groups. He looks forward to continuing the work begun upon his incarceration and avail himself of any and all resources provided by BOP to better prepare him for his release should he live out his sentence.

**III. Conclusion**

Mr. Sather requests this Court impose a sentence of 180 months and run it concurrent with any sanction in his supervised release case. Imposition of a 180 sentence well exceeds the average (137 months) and median (135 months) sentences for similarly situated defendants by nearly *four years*. Using either the average or median sentence and adding the statutory maximum of 36 months on the supervised

release violation still results in a sentence of less than 180 months. By no calculation can imposition of the mandatory minimum be *insufficient* to carry out the purposes of §3553(a) factors.

Mr. Sather respectfully requests this Court sentence him as outlined above.

Dated: August 17, 2026

Federal Defenders of Eastern Washington & Idaho

*s/Nathan Poston*

Nathan Poston, WA 41901
601 West Riverside Ave., Suite 900
Spokane, Washington 99201
t:(509) 624-7606
Nathan_Poston@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Perez, Rebecca, Assistant United States Attorney.

*s/Nathan Poston*

Nathan Poston, WA 41901
601 West Riverside Ave., Suite 900
Spokane, Washington 99201
t:(509) 624-7606
Nathan_Poston@fd.org